IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JONATHAN LEWIS, on behalf of himself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>PRECISION CONCEPTS GROUP, LLC<br><br>*Defendant.* | Case No. 1:18-cv-00064<br><br><br>Collective, Class, and Individual<br>**COMPLAINT** |

COMES NOW, Jonathan Lewis ("Named Plaintiff"), on behalf of himself and others similarly situated (collectively "Named and Putative Plaintiffs"), by and through undersigned counsel, hereby sets forth this collective/class action, and individual action, against Defendant Precision Concepts Group, LLC ("Defendant"), and alleges as follows:

## PRELIMINARY STATEMENT

1.     This action is brought individually and as a collective action for unpaid overtime compensation, recordkeeping violations, liquidated damages, and all related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  Defendant had a systemic company-wide policy, pattern, or practice of failing to pay their employees all hours worked, or for hours worked in excess of forty (40) each week at a rate of one and one-half (1.5) their regular rate of pay.

2.     This action is also brought individually and as a class action for payment of all owed, earned, and promised wages, and for other relief as appropriate, under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq*.

3.     Defendant's pay practices and policies were in direct violation of the FLSA and the NCWHA.  Accordingly, Named and Putative Plaintiffs seek unpaid straight-time compensation, unpaid overtime compensation, unpaid owed, earned, and promised wages, in addition to liquidated damages, attorneys' fees and costs, interest, and other damages permitted by applicable law.

4.     This action is also brought by Named Plaintiff individually to remedy Defendant's unlawful acts under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, upon Named Plaintiff's exercise of his rights under the FMLA.

5.     Defendant violated the law by interfering with Named Plaintiff's FMLA-protected medical leave, since Defendant repeatedly harassed Named Plaintiff for invoking his FMLA rights, including by informing him that he took "too much" leave, and that Defendant would "find someone who will be [there] all the time."  Defendant also retaliated against Named Plaintiff for engaging in FMLA-protected activities, in violation of the law, by harassing Named Plaintiff and, ultimately, terminating him for his "no-shows." Defendant did not act in good faith and with reasonable grounds to believe they were not violating the FMLA.

6.     Named Plaintiff seeks all wages, salary, benefits, or other compensation denied to or lost by Named Plaintiff as a result of Defendant's FMLA violations, monetary losses sustained, an equal amount of liquidated damages, interest at the prevailing rate, and attorneys' fees and costs, pursuant to Section 107 of the FMLA, 29 U.S.C. § 2617.

## JURISDICTION AND VENUE

7.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331,

based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq.*, and the claims brought under the FMLA, 29 U.S.C. § 2601, *et seq.*

8.    The United States District Court for the Middle District of North Carolina has jurisdiction because Defendant conducts business in Forsyth County, North Carolina, which is located within this District.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Defendant conducts business within the Middle District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

10.    Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 over the pendent state law claim under the NCWHA, because that claim arises out of the same nucleus of operative fact as the FLSA claim.

11.    All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

12.    The evidence establishing liability for both the FLSA and NCWHA causes of action will be similar, and neither issue will predominate nor create confusion for a jury.

## **PARTIES**

13.    Named Plaintiff is an adult resident of the State of North Carolina, residing at 306 Wake Drive, Winston Salem, North Carolina 27106.

14.    Named Plaintiff worked for Defendant as an hourly-paid manufacturing employee from June 4, 2012 until June 2, 2017.

15.    The FLSA collective action Putative Plaintiffs consist of individuals who

3

were, are, or will be employed by Defendant as non-exempt employees, who did not receive all compensation due and owing for all pre- and/or post-shift activities, at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b).

16.     The NCWHA Rule 23 proposed class action Putative Plaintiffs consist of individuals who were, are, or will be employed by Defendant as non-exempt employees, who did not receive all compensation due and owing for all pre- and/or post-shift activities, at any time within the two (2) year period prior to the commencement of this lawsuit.

17.     Defendant is a limited liability company incorporated in North Carolina, with its principal place of business in Winston Salem, North Carolina.  Defendant is authorized to do business in the State of North Carolina.

18.     Upon information and belief, during the time period relevant to this action, Defendant was an employer, joint employer, or member of an integrated, common enterprise, that employed Named and Putative Plaintiffs, pursuant to the FLSA and NCWHA, in that Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Named and Putative Plaintiffs, and Defendant received the benefit of Named and Putative Plaintiffs' labor.

## COVERAGE

19.     At all times material to this action, Defendant has acted, directly or indirectly, in the interest of an employer or joint employer with respect to Named and Putative Plaintiffs.

20.     At all times material to this action, Defendant was an employer within the

4

defined scope of the FLSA, 29 U.S.C. § 203(d).

21.     At all times material to this action, Named and Putative Plaintiffs were individual employees within the scope of the FLSA, 29 U.S.C. § 207.

22.     At all times material to this action, Defendant was an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

23.     At all times material to this action, Defendant was an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

24.     At all times material to this action, Defendant has been, and continues to be, an "employer" engaged in "commerce or in any industry or activity affecting commerce," which employ fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year, within the meaning of the FMLA, 29 U.S.C. § 2611(4).

## WAGE-RELATED FACTUAL ALLEGATIONS

25.     Defendant operates a metal stamping, molding, and electro-mechanical and medical assemblies company, based in Winston Salem, North Carolina.

26.     Named Plaintiff worked for Defendant at their Winston Salem, North Carolina location from June 4, 2012 until June 2, 2017.

27.     Named Plaintiff worked as an Assembler/Inspector from approximately June 4, 2012 until 2015, and as an Assembly Lead II from approximately 2015 until June 2, 2017.

28.     Named Plaintiff's duties included, but were not limited to, handling inventory, training employees, managing work assignments, and acting as assistant manager, when needed.

29.     Named Plaintiff was compensated on an hourly basis.

30.     Named Plaintiff did not have the authority to hire or fire employees, and did not exercise discretion or independent judgment with respect to matters of significance.

31.     Upon information and belief, at all relevant times, Defendant employed and continues to employ at least 129 non-exempt individuals in manufacturing, and/or in similar positions as Named Plaintiff.

32.     During the relevant period, Named Plaintiff's typical schedule was Monday through Friday, 7:00 a.m. through 3:30 p.m., though he occasionally worked from 3:00 p.m. through 11:30 p.m., for which Defendant paid a shift differential of ten-percent (10%) per hour.

33.     Named Plaintiff was provided with two (2) ten-minute paid breaks each shift, and one (1) thirty-minute unpaid lunch break each shift.

34.     In order to record the time worked of their employees, including Named and Putative Plaintiffs, Defendant utilized a fingerprint scan system that employees used to

6

clock-in and clock-out each shift.

35.     Defendant's fingerprint scan system recorded the exact times each employee worked, accurate to the nearest minute.

36.     Although Defendant's fingerprint scan system recorded the exact times each employee clocked in or out, the system automatically rounded and reduced employees' time records to the nearest fifteen-minute increment.  For example, if an employee's scheduled shift began at 7:00 a.m., and the employee clocked in at 6:45 a.m., the system rounded the recorded time to 7:00 a.m.  Similarly, if an employee's scheduled shift ended at 3:30 p.m., and the employee clocked out at 3:45 p.m., the system rounded the recorded time to 3:30 p.m.

37.     Named Plaintiff typically arrived and began working prior to the beginning of his scheduled shift, and continued working after the conclusion of his scheduled shift, which Defendant had actual or constructive knowledge of.  As a result of Defendant's fingerprint scan system, Named Plaintiff lost approximately thirty (30) minutes in due and owing time worked each shift, and he was not compensated for such time worked.

38.     Upon information and belief, Named and Putative Plaintiffs suffered similarly from Defendant's fingerprint scan clock rounding, leaving them unpaid for all hours worked.

39.     Named Plaintiff brought the issues related to the fingerprint scan system to the attention of Defendant's Human Resources Division, but he was informed that they would not alter the system, even though, upon information and belief, they had the ability to correct the system.

7

40.     In addition, Defendant's policies and practices essentially required that Named and Putative Plaintiffs arrived and began working prior to the start of their scheduled shift, and stopped working and departed subsequent to the end of their scheduled shift.  Named and Putative Plaintiffs were expected to be ready to perform manufacturing work immediately upon the beginning of their shift.

41.     Among the tasks that Named and Putative Plaintiffs were required to perform prior to the start of their scheduled shift included, but was not limited to, preparatory work, maintenance work, cleaning work, and paperwork.

42.     Among the tasks that Named and Putative Plaintiffs were required to perform subsequent to the end of their scheduled shift included, but was not limited to, cleaning work.

43.     Named and Putative Plaintiffs were disciplined and/or penalized by Defendant if they did not perform the pre- and post-shift work that Defendant required them to perform prior or subsequent to their scheduled shifts.

44.     Although Defendant's fifteen (15) minute rounding per clock-in or clock-out was otherwise neutral, it did not benefit Named and Putative Plaintiffs, since, pursuant to Defendant's policies and practices, Named and Putative Plaintiffs were disciplined and/or penalized if they did not perform the pre- and post-shift work that Defendant required them to perform prior or subsequent to their scheduled shifts.

45.     In addition, and distinct from Defendant's fingerprint scan system, Defendant required that managers delete records of overtime hours worked, even if Defendant had actual or constructive knowledge of such work, if managers did not

8

specifically approve overtime in advance. Accordingly, Named and Putative Plaintiffs regularly had their overtime hours removed, and were not paid any compensation for such hours worked.

## FMLA-RELATED FACTUAL ALLEGATIONS

46.    In early 2016, Named Plaintiff requested and was granted intermittent FMLA leave in order to care for his grandmother, who suffered from vertigo, gastrointestinal issues, and vision issues, and who was living with him.

47.    On or about June 1, 2016, Named Plaintiff requested and was granted intermittent FMLA leave for the surgical removal of a lump in his right breast, Crohn's Disease, bipolar disorder, and anxiety, which all qualified as serious health conditions.

48.    Named Plaintiff abided by all of Defendant's reporting and leave request requirements and procedures, and made all efforts to inform Defendant of any forthcoming absences as early as practicable.

49.    Despite having received timely notice of the need for Named Plaintiff's leave, Defendant never provided Named Plaintiff with proper notice concerning Plaintiff's eligibility, rights and responsibilities, or whether the requested leave would be designated as FMLA leave.   Essentially, Plaintiff was simply advised that "FMLA leave was not a 'get out of jail' free card, and despite Plaintiff's request for intermittent leave, Plaintiff would be required to have planned and approved leave for every absence.

50.    Named Plaintiff took intermittent FMLA leave and missed, on average, three (3) to four (4) shifts per month.

51. Despite Defendant's failure to properly notify Plaintiff of his FMLA eligibility and leave designation, including, but not limited to, how such intermittent leave would be counted, Defendant granted intermittent, but then subjected Plaintiff to a number of abuses in the workplace for taking FMLA leave, including, but not limited to: (1) being informed by a manager, on or about November 19, 2016, that he took "too much" leave, and that Defendant would need to "find someone else who will be [there] all the time;" and (2) being informed by a manager that he was "on thin ice" for having taken FMLA leave.

52. In the final few months of his employment, Named Plaintiff was repeatedly and regularly harassed and criticized for taking FMLA leave, even while Defendant's managerial staff was praising him for performing well at his job.

53. Named Plaintiff was never informed to change the manner in which he contacted any of Defendant's agents prior to requesting FMLA leave, including, but not limited to, contacting Defendant's Vice President. The North Carolina Division of Employment Security ("DES"), upon an appeal and investigation, confirmed this fact. Accordingly, Named Plaintiff continued contacting Human Resources and his manager upon requesting leave, as all employees were required to do.

54. Named Plaintiff was scheduled to take FMLA leave for a much-needed surgery, and he had requested (thirty) days off from July 17, 2017 through August 14, 2017. This leave request was made in advance, and in accordance with all of Defendant's procedures. While Defendant's Vice-President had advised Named Plaintiff that the FMLA had been approved in advance, and that they simply needed to know the dates of the surgery, Named Plaintiff was terminated shortly before his scheduled surgery.

10

55.     On June 2, 2017, Named Plaintiff was terminated.  Named Plaintiff was informed by Defendant's management that his termination was related to his "no-shows" the week prior, during which he had taken intermittent FMLA leave, and were related to his failure to notify the Vice President of Defendant of his absences, even though Defendant never instructed Plaintiff to notify the Vice President.

56.     Upon entering the meeting that Named Plaintiff was called to, during which he was terminated, Named Plaintiff noticed Defendant's management frantically deleting his emails.  Upon information and belief, the emails that were deleted related to Named Plaintiff's FMLA leave requests.

57.     Following Named Plaintiff's termination, Named Plaintiff filed for unemployment benefits through the DES.  Upon an appeal and investigation, the DES found, among other things, that Named Plaintiff "was not insubordinate," was absent from work "because of illness," had leave at issue that "was approved [by Defendant]," and that "[Named Plaintiff] was not discharged for misconduct connected with the work."  In light of these findings, and Defendant's consistent favorable reviews of Named Plaintiff, Named Plaintiff's termination was, upon information and belief, directly related to his exercising his rights under the FMLA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

58.     Named Plaintiff brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all similarly situated employees.

59.     Similarly situated employees, for purposes of the FLSA collective action claim, include individuals who were, are, or will be employed by Defendant as non-exempt employees, who did not receive all compensation due and owing for all pre- and/or post-shift activities, at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b).

60.     The members of the proposed collective action, like Named Plaintiff, were employed as manufacturing employees, and were subject to the same or similar pay practices.

61.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Named and Putative Plaintiffs.

62.     Named Plaintiff requests that he be permitted to serve as representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

63.     Pursuant to 29 U.S.C. § 216(b), attached to and filed with the instant Complaint as Exhibit A, is a Consent to File Suit as Plaintiff executed by Named Plaintiff.

## NCWHA CLASS ACTION ALLEGATIONS

64.     Named Plaintiff brings the Second Count of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq*.

65.     Pursuit of this action as a class will provide the most efficient mechanism for

adjudicating the claims of Named and Putative Plaintiffs.

66.    <u>The Proposed Class</u>:  Individuals who were, are, or will be employed by Defendant as non-exempt employees, who did not receive all compensation due and owing for all pre- and/or post-shift activities, at any time within the two (2) year period prior to the commencement of this lawsuit.

67.    <u>Numerosity</u>:  The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  While the exact number of class members is unknown to Named Plaintiff at this time, upon information and belief, the class comprises at least one-hundred (100) individuals.

68.    <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant's failure to pay for all hours worked.  The common questions of law and fact include, but are not limited to, the following:

   a.  Whether Defendant's practice of altering time-sheets to reduce recorded hours worked violates the NCWHA;

   b.  Whether Defendant's system of rounding and reducing employees' time records violates the NCWHA;

   c.  Whether Defendant failed to pay Named and Putative Plaintiffs all of their

13

owed, earned, and promised wages, including, but not limited to, any straight-time or overtime wages, on their regular pay date, pursuant to N.C. Gen. Stat. § 95.25.6; and

d. Whether Defendant compensated Named and Putative Plaintiffs for all of their hours worked

69. <u>Typicality:</u> The claims of Named Plaintiff are typical of the claims of each proposed class member, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant, as alleged herein, of failing to pay employees all of their earned and accrued wages pursuant to N.C. Gen. Stat. § 95-25.6. Defendant's compensation policies and practices affected all putative class members similarly. Named Plaintiff and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

70. <u>Adequacy of Representation:</u> Named Plaintiff is able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Named Plaintiff members of the proposed class. Named Plaintiff has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

71. <u>Superiority:</u> A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated

persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action

72. <u>Public Policy Considerations:</u> Defendant violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing

15

these risks.

## COUNT ONE
### Violation of the Fair Labor Standards Act
### 29 U.S.C. § 207
### (Failure to Pay Proper Overtime Wages)
### (On Behalf of Named and Putative Plaintiffs)

73.     Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

74.     Pursuant to the FLSA, 29 U.S.C. § 207, an employer must pay non-exempt employees at one and one-half (1.5) times their regular hourly rate for all hours worked over forty (40) in a single workweek.

75.     Named and Putative Plaintiffs regularly worked greater than forty (40) hours per week.

76.     As a result of their policy of rounding, reducing, and/or altering time records, and effectively removing hours worked from time records, Defendant failed to compensate Named and Putative Plaintiffs at the rate of one and one-half (1.5) times their regular hourly rate each workweek, for hours worked over forty (40) in a workweek, in violation of 29 U.S.C. § 207.

77.     Named and Putative Plaintiffs are entitled to back wages at a rate of at least one and one-half (1.5) times their regular rate of pay.

78.     Named and Putative Plaintiffs were not paid for all hours worked, including overtime hours worked, despite the fact that Named Plaintiff lodged complaints to Defendant's Human Resources Division regarding the unfair rounding of Defendant's

16

fingerprint scan system, and despite the fact that Defendant had actual or constructive knowledge of such unpaid hours worked. As such, Named and Putative Plaintiffs are also entitled to liquidated damages in an amount equal to the amount of unpaid overtime wages under 29 U.S.C. § 216(b), since Defendant cannot show they acted in good faith, and a three (3) year, rather than two (2) year statute of limitations, since Defendant's acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

79.     As such, Named and Putative Plaintiffs seek to recover from Defendant the following damages:

a.  Overtime wages due;

b.  Liquidated damages in an equal amount;

c.  Reasonable attorneys' fees and costs; and

d.  All other legal and equitable relief as the Court deems just and proper.

## COUNT TWO
### Violation of the North Carolina Wage and Hour Act
### N.C. Gen. Stat. § 95-25.6
### (Failure to Pay All Owed, Earned, and Promised Wages)
### (On Behalf of Named and Putative Plaintiffs)

80.     Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

81.     At all relevant times, Defendant has employed, and/or continues to employ, Named and Putative Plaintiffs within the meaning of the NCWHA.

82.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and

promised wages, on the employee's regular payday.

83.     Defendant employed Named and Putative Plaintiffs within the State of North Carolina.

84.     Defendant failed to pay all owed, earned, and promised wages to Named and Putative Plaintiffs, as Defendant knowingly employed systems that rounded, reduced, and/or altered Named and Putative Plaintiffs' time records, despite requiring Named and Putative Plaintiffs to perform work during such time.

85.     Defendant failed to pay all owed, earned, and promised wages to Named and Putative Plaintiffs, despite the fact that Named Plaintiff lodged complaints to Defendant's Human Resources Division regarding the unfair rounding of Defendant's fingerprint scan system, and despite the fact that Defendant had actual or constructive knowledge of such unpaid hours worked.

86.     As a result of Defendant's unlawful policies and practices, Named and Putative Plaintiffs have been deprived of compensation due and owing.

87.     Consistent with the above, Defendant failed to pay Named and Putative Plaintiffs all owed, earned, and promised wages, in violation of N.C. Gen. Stat. § 95-25.6.

88.     For the reasons stated above, Defendant cannot affirmatively defend their NCWHA violations as having been done in good faith, entitling Named and Putative Plaintiffs to liquidated damages in an amount equal to the amount of unpaid overtime wages under N.C. Gen. Stat. § 95-25.22(a1).

89.     As such, Named and Putative Plaintiffs seek to recover from Defendant the following damages:

18

a. Damages in the amount of unpaid, earned compensation;

b. Liquidated damages in an equal amount;

c. Reasonable attorney's fees and costs;

d. Prejudgment interest; and

e. All other legal and equitable relief as the Court deems just and proper.

**COUNT THREE**
**Violation of the Family Medical Leave Act**
**29 U.S.C. § 2601,** *et seq.*
**(Interference)**
**(On Behalf of Named Plaintiff)**

90.  Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

91.  Among the stated purposes of the FMLA, under 29 U.S.C. § 2601(b)(1) and (2), are to "balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity," and "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."

92.  The FMLA, pursuant to 29 U.S.C. § 2615(a)(1), prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the FMLA]."

93.  At all relevant times, Named Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2), since he had been employed for at least twelve months by Defendant, and he had provided at least 1,250 hours of service with Defendant during the

preceding twelve-month period.

94.    At all relevant times, Defendant was an "employer" engaged in "commerce or in any industry or activity affecting commerce," which employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year, within the meaning of the FMLA, 29 U.S.C. § 2611(4).

95.    Named Plaintiff suffered a serious health condition, pursuant to 29 C.F.R. §§ 825.113-115.

96.    While Named Plaintiff provided notice to Defendant of his serious health condition and need for FMLA-qualifying leave, Defendant failed to provide eligibility notice under 29 C.F.R. § 825.300(b), rights and responsibilities notice under 29 C.F.R. § 825.300(c), or designation notice under 29 C.F.R. § 825.300(d).

97.    As provided in the FMLA regulations, 29 C.F.R. § 825.300(e), failure to follow notice requirements "may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights."

98.    Pursuant to the FMLA regulations, 29 C.F.R. § 825.220(b), interfering with the exercise of an employee's rights under the FMLA include "discouraging an employee from using such leave."

99.    In addition to failing to comply with its notice requirements, Defendant's repeated harassment and threats to Named Plaintiff for taking FMLA leave, including, but not limited to, informing him that he took "too much" leave, that Defendant would "find someone else who will be [there] all the time," and that Named Plaintiff was "on thin ice"

20

for having taken FMLA leave, constitute unlawful interference under the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

100.    The FMLA interference violation of Defendant, as described herein, was not in good faith, and Defendant did not have reasonable grounds for believing that their acts or omissions were not a violation of the FMLA, entitling Named Plaintiff to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

101.    Defendant's violations entitle Named Plaintiff to all wages, salary, benefits, or other compensation denied to or lost by Named Plaintiff, monetary losses sustained, an equal amount of liquidated damages, interest at the prevailing rate, and attorneys' fees and costs.

## COUNT FOUR
### Violation of the Family Medical Leave Act
### 29 U.S.C. § 2601, *et seq.*
### (Retaliation)
### (On Behalf of Named Plaintiff)

102.    Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

103.    The FMLA, pursuant to 29 U.S.C. § 2615(a)(2) and 29 C.F.R. § 825.220(c), prohibits employers from discriminating or retaliating against an employee for exercising or attempting to exercise their FMLA rights.  This includes using an employee's exercise or attempted exercise of FMLA rights as a negative factor in employment actions, such as adverse treatment, disciplinary actions, or termination.

104.    The FMLA, pursuant to 29 U.S.C. § 2614(a), prohibits an employer from

Case 1:18-cv-00064-LCB-JEP   Document 1   Filed 01/31/18   Page 21 of 24

discharging an employee for taking FMLA leave.

105.    Defendant retaliated and/or discriminated against Named Plaintiff for exercising or attempting to exercise his FMLA rights by threatening to terminate his employment for taking FMLA leave, criticizing and harassing Named Plaintiff for taking FMLA leave, and, ultimately, terminating Named Plaintiff's employment for taking FMLA leave, including for his "no-shows" during the week in which he took FMLA leave.

106.    The FMLA retaliation violation of Defendant, as described herein, was not in good faith, and Defendant did not have reasonable grounds for believing that its acts or omissions were not a violation of the FMLA, entitling Named Plaintiff to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

107.    Defendant's violations entitle Named Plaintiff to all wages, salary, benefits, or other compensation denied to or lost by Named Plaintiff, monetary losses sustained, an equal amount of liquidated damages, interest at the prevailing rate, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

1.    Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as a representative of all those similarly situated under the FLSA collective action;

2.     Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiff as a representative on behalf of all those similarly situated under the NCWHA class;

3.     Award Named Plaintiff and all those similarly situated actual damages for all unpaid wages found due to Named Plaintiff and those similarly situated, and liquidated damages equal in amount, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a1), and pursuant to the FLSA, 29 U.S.C. § 216(b);

4.     Award Named Plaintiff and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), and pursuant to the FLSA, 29 U.S.C. § 216(b);

5.     Award Named Plaintiff and all those similarly situated attorney's fees, costs, and disbursements as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d), and pursuant to the FLSA, 29 U.S.C. § 216(b);

6.     Award Named Plaintiff all wages, salary, benefits, or other compensation denied to or lost by Named Plaintiff, and monetary losses sustained, as a result of Defendant's unlawful actions under the FMLA;

7.     Award Named Plaintiff interest at the prevailing rate, as provided under 29 U.S.C. § 2617(a)(1)(A)(ii);

8.     Award Named Plaintiff liquidated damages, as provided under 29 U.S.C. § 2617(a)(1)(A)(iii);

9.     Award Named Plaintiff attorneys' fees and costs, as provided under 29 U.S.C. § 2617(a)(3); and

10.    Award Named and Putative Plaintiffs further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this January 31, 2018

*/s/ Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Michael B. Cohen (NCSB No. 50629)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mcohen@gildahernandezlaw.com

24