IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JONATHAN LEWIS on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>PRECISION CONCEPTS GROUP LLC,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)  1:18CV64<br>)<br>)<br>)<br>)<br>)<br>) |

## FINAL ORDER

This matter is before the Court on the Unopposed Motion for Final Approval of the Collective and Class Action Settlement, (ECF No. 79-1). Also, before the Court are the Unopposed Motion for Attorney Fees and Reimbursement of Expenses, (ECF. No. 82), and the Unopposed Motion for Preliminary Approval of Service Awards, (ECF No. 80).

Plaintiff Jonathan Lewis worked as an assembly line and/or manufacturing employee for Defendant Precision Concepts Group, LLC ("Defendant" or "PCG"). He asserts claims on behalf of himself and all others similarly situated, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., 216(b); and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §95-25.1, et seq. Plaintiff claims Defendant failed to pay its manufacturing and/or assembly line employees, all wages owed, earned and accrued, promised, straight-time, including overtime at a rate of one-and-one-half their regular rate of pay for work performed in excess of forty (40) hours per week. Defendant denies any liability or wrongdoing of any kind under the FLSA and NCWHA and pled various defenses.

In addition to extensive and meaningful discovery, this case has already involved extensive litigation over a variety of motions. While full, class-wide merits discovery was nearly complete with dispositive motion briefing underway, along with trial preparation, the parties engaged in substantial negotiations and briefing following the Court's Order granting Plaintiff's Motion for Conditional Certification/Class Certification, (ECF No. 35), and during Phase II Merits discovery. Soon after the Parties neared Phase II Discovery and before their deadline to submit dispositive motions, the Parties participated in mediation. Prior to mediation, Defendants provided to Plaintiffs the necessary and (any updated) time and payroll data for Plaintiffs to conduct a data analysis and calculate possible damages for Plaintiffs and class members.

On August 26, 2020, the parties attended a remote mediation with mediator Hunter Hughes III, a nationally recognized class- and collective-action wage and hour mediator. At the mediation, the Parties reached an agreement in principle. After a nearly twelve (12) hour mediation, the Parties reached the Settlement Agreement described below on October 19, 2020. (ECF. No. 79-1).

On October 19, 2020, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement consistent with the Parties' Stipulation and Settlement Agreement, to (1) grant preliminary approval of the proposed class and collective action settlement; (2) approve the appointment of Angeion Group ("Angeion") as settlement administrator; and (3) approve the proposed notice of the settlement and claim forms. (ECF No. 78).

On November 6, 2020, the Court preliminarily approved, subject to further consideration thereof at the Final Approval Hearing, (1) the Parties' Stipulation and Settlement

Agreement; (2) the proposed Notices for mailing, consistent with the procedures outlined in the Parties' Stipulation and Settlement Agreement; and (3) the appointment of Angeion as the Settlement Administrator. (*See* ECF. No. 85).

Also, consistent with the Parties' Stipulation and Settlement Agreement, the Court set the deadline for members of the certified class to opt out of the settlement or submit an objection. (ECF No. 85). Pursuant to Rule 23(e) of the Fed. R. Civ. P., the Court scheduled a fairness hearing for March 22, 2021 at 2:00 p.m., to determine whether the proposed Settlement Agreement is fair. *Id.*

Finally, Angeion was appointed to serve as the neutral, third-party Settlement Administrator in this case, *id.*, and consistent with the Parties' Settlement Agreement, the Court ordered and authorized Angeion to perform the administrative duties as outlined in its November 6, 2020 Order.

Having considered the Plaintiffs' Unopposed Motion for Final Approval, their Unopposed Motion for Attorneys' Fees and Expenses, their Unopposed Motion for Service Awards, and the supporting declarations, the oral argument presented at the fairness hearing, and the complete record in this action, for the reasons set forth therein and stated on the record at the March 22, 2021, fairness hearing, and for good cause shown,

IT IS THEREFORE ORDERED:

1.      Plaintiffs' Unopposed Motion for Final Approval, (ECF. No. 88), is GRANTED and finally approves the settlement as set forth in the Parties' Settlement Agreement, (ECF No. 79-1) (the "Settlement Agreement").

3

## Final Settlement Approval

2.      It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992); *see also Reynolds v. Fid. Investments Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 91874, at *3 (M.D.N.C. Jan. 8, 2020).  *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William B. Rubenstein, 4 *Newberg on Class Actions* § 13.44, n.1 (5th ed. Dec. 2019 Update) (collecting cases).

3.      The Court may approve a class settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06–CV–00400–BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing, e.g., *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)).  The Court acts as a fiduciary of the class members.  *Sharp Farms v. Speaks*, 917 F.3d 276, 293–94 (4th Cir. 2019).

## Procedural Fairness

4.      The proposed settlement is procedurally fair and was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims.  *See West v. Cont'l Auto., Inc., No.*, 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *4 (W.D.N.C. Feb. 5, 2018) (unpublished) ("The Settlement was not hastily arrived at. Indeed,

the Settlement followed lengthy discussions and considerable dialogue between the Parties, as well as arms-length negotiations involving extensive argument and counterargument."); *Matthews v. Cloud 10 Corp.*, No. 4:13-cv-646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586, at *8 (W.D.N.C. Aug. 27, 2015) (unpublished); *Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 294047, at *4 (D. Md. June 13, 2013) (unpublished); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011); *see also Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 (RLM), 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (unpublished) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation. . . [and] enlisted the services of an experienced employment [law] mediator.

5.     Class Counsel conducted thorough investigations and evaluated the claims and defenses, engaged in substantial discovery, motion practice, and reached a settlement after a mediation between the Parties. *See generally* Dkts. 30,35,49,62,69, and 78-84.

6.     On August 26, 2020, the Parties participated in a full twelve (12) hour mediation session with an experienced employment mediator. Over the next couple of months, the Parties continued to negotiate additional terms of the settlement, which they memorialized in the Settlement Agreement. *See* ECF No. 79-1. These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the Settlement meets the requirements of due process. Moreover, there is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. *See West*, WL 1146642, at *5 ("[T]here is no evidence in the record before the Court, nor has there been any suggestion by anyone, that there has

5

been any fraud or collusion among the Parties or their attorneys in arriving at the terms of this Settlement.").

## Fair, Adequate, and Reasonable

7.      The settlement is substantively fair and meets all factors that illuminate this analysis. *See Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019); *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991); *see also Detroit v. Grinnell Corp.*, 495 F.2d 448, 452 (2d. Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

8.      The factors this Court considers are: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in FLSA class action litigation. *See Berry*, 807 F3d at 614; *Scardelletti v. Debarr,* 43 F. App'x 525, 528 (4th Cir. 2002) (per curiam) (unpublished); *In re Jiffy Lube Secs. Litig.*, 927 F.2d at 158-59; *West*, WL 1146642, at *4.

9.      Litigation through trial would be complex, expensive, and uncertain.  Thus, the posture of the case at the time the settlement was proposed weighs in favor of final approval.

10.     The class members' reaction to the settlement was positive.  The Notices sent to all Settlement Class Members included an explanation of their damages calculated pursuant to payroll and time records produced by Defendant and finalized on a pro-rata basis.  The form of the Court-approved notice sent to the Rule 23 Settlement Class also informed such individuals of their right to object to or exclude themselves from the Settlement and explained how to do so.  No Settlement Class Member objected to the proposed settlement, and only

6

one requested exclusion. This favorable response demonstrates that the class approves the settlement, which further supports final approval. *See e.g., West*, 2018 WL 1146642, at *6 (No objections have been filed in this case. It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." (internal quotations omitted)); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013) (unpublished); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (collecting cases).

11.     The Parties have completed voluminous bifurcated discovery both pursuant to both Phases I and II, which supports settlement. The proper question is whether "Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *West*, 2018 WL 1146642, at *4; *see Riddle v. City of Anderson*, No. 8:12-cv-03480-TMC, 2015 WL 12830369, at *6 (D.S.C. Jan. 26, 2015) (unpublished). They did. The parties engaged in extensive written discovery, conducted nearly ten (10) depositions between the parties, exchanged information during pre- and post-certification discovery and in anticipation of mediation. Defendants produced updated payroll and time records multiple times for class members and for named, opt-in, and putative plaintiffs. Class counsel have also had the benefit of informal discovery, which took place prior to the commencement and throughout the litigation from all of the opt-in Plaintiffs and Rule 23 class members. Moreover, briefing on Plaintiffs' motion for conditional and class certification provided Plaintiffs and their counsel with a wealth of information, all of which allowed them to evaluate the strengths and weaknesses of their case. Thus, the second factor

weighs in favor of final approval.

12.     "In complex, multi-year class actions, the risks inherent in the litigation are immense." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (citations omitted).  Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses."  *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 WL 12850547, at *12 (D.S.C. July 22, 2015) (unpublished) (quotation omitted).  Plaintiffs have to overcome probable attempts to decertify the FLSA collective action and certification of the Rule 23 Classes.  As other cases predicated on similar theories of liability suggest, this threat is real.  Moreover, Plaintiffs would still have to overcome Defendants' arguments regarding Plaintiffs' claims, because as they maintain, Plaintiffs, opt-ins, and Rule 23 class members have been properly paid for all of their earned and accrued wages on their pay date, including, but not limited to any straight, promised, or overtime wages.  Thus, the second and third factors weigh in favor of final approval.

13.     There is no evidence whether Defendants could withstand a greater judgment.  However, even if Defendants could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005); *see In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000).  Thus, given that all of the factors weigh in favor of the proposed settlement, this factor is not an obstacle to final approval.

14. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is adequate and reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (quotation omitted). This Court considers (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *See Sharp Farms*, 917 F.3d at 299; *In re Jiffy Lube Secs. Litig.*, 927 F.2d at 159; *West*, 2018 WL 1146642, at *4. The first two factors are the most important. *See Sharp Farms*, 917 F.3d at 299. As discussed, the Settlement Agreement meets these factors.

## APPROVAL OF THE FLSA AND RULE 23 SETTLEMENT

15. For settlement purposes only, the Settlement Classes are finally certified pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b).

16. The Court hereby approves the FLSA collective action settlement.

17. Settling parties routinely seek judicial approval of a proposed settlement to ensure fairness and to give effect to the FLSA releases. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *McMahon v. Olivier Cheng Catering & Events LLC,* 08 Civ. 8713 (PGG), U.S. Dist. LEXIS 18913, at *15. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of a settlement. *Lynn's Food Stores,* 679 F.2d at 1353-54. If the proposed settlement

9

reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon,* 2010 U.S. Dist. LEXIS 18913, at *15.

18.     Here, the settlement was the result of a formal mediation involving arm's-length settlement negotiations. *See* (ECF No. 78; ECF No. 79-1.  During the entire process, plaintiffs and defendants were represented by counsel experienced in wage and hour law.  Accordingly, the Settlement Agreement resolves an actual dispute under the circumstances supporting a finding that is fair and reasonable.

19.     The Court hereby approves the Rule 23 class action settlement.

20.     Courts generally approve Rule 23 class action settlements when they are fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e).  After due consideration and inquiry into the circumstances surrounding the proposed settlement of Plaintiffs' collective FLSA claims and Rule 23 class claims under the NCWHA against Defendant, and review of the Settlement Agreement, the Court finds and concludes that the proposed settlement in this case meets the standard for approval as it reflects a reasonable compromise of a bona fide dispute. The Court finds and concludes that the proposed settlement is just and reasonable and in the best interest of the Parties.  The Court further finds the settlement to have been reached in good faith.  The Court further finds that the Parties' Settlement Agreement is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e).  The Court finds that the approved class representative, Named Plaintiff Jonathan Lewis, and Class Counsel have adequately represented the class and that the settlement proposal was negotiated at arm's length.  The Court further finds that the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of

distributing relief to the class; (iii) the terms of the proposed award of attorneys' fees, including timing of payment; and (iv) the Parties' Settlement Agreement. The Court also finds that the settlement proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(A)-(D).

## DISSEMINATION OF NOTICE

21.     Pursuant to the Court's order preliminarily approving the Parties' settlement, (ECF No. 85), and it order dated November 6, 2020, all Rule 23 Settlement Class Members and Putative FLSA Collective Members of the Settlement Agreement, were sent court-approved notices by first class mail at his or her last known address.

22.     The Notices and reminder postcards fairly and adequately advised Rule 23 Settlement Class Members and Putative FLSA Collective Members of the terms of the settlement, as well as the right of Rule 23 Settlement Class Members to opt-out of or to object to the settlement, and to appear at the fairness hearing conducted on March 22, 2021. Rule 23 Settlement Class Members and Putative FLSA Collective Members were provided with the best notice practicable under the circumstances.

23.     The Notices and their distribution met with all constitutional requirements, including due process.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND SERVICE AWARDS TO PLAINTIFF AND EARLY OPT-INS

24.     Rule 23 and the FLSA both allow for the award of reasonable attorney's fees and expenses. *Hall v. Higher v. One Machs., Inc.*, No. 5-15-CV670-F, 2016-WL 5416582, at *7 (E.D.N.C. Sept. 26, 2016). Rule 23(h) provides in relevant part that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized

by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The FLSA contains a fee-shifting provision: the court "shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

25.     The Fourth Circuit generally uses the lodestar method for determining a reasonable fee in an FLSA settlement, defined as a reasonable hourly rate multiplied by hours reasonably expended.  *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 411-12 (D. Md. 2014); *See Quaratino v. Tiffany & Co.,* 166 F.3d 422, 426 (2d Cir.1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation."); *Fegley v. Higgins,* 19 F.3d 1126, 1134–35 (6th Cir.1994) ("The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourage[s] the vindication of congressionally identified policies and rights"). The Fourth Circuit has accordingly recognized that "[a]wards of attorney's fees substantially exceeding damages are not unusual in civil rights litigation." *Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 328 n. 20 (4th Cir.2006) (citing *Mercer v. Duke Univ.,* 401 F.3d 199, 211–12 (4th Cir.2005) (affirming $349,244 in attorney's fees awarded in Title IX suit yielding only nominal damage award). The same principle applies to FLSA cases. *Cf. Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 558 (7th Cir.1999).

26.     The Fourth Circuit considers twelve factors to evaluate the overall reasonableness of an award of attorney's fees: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees awards in similar cases." *Barber v. Kimbrell's Inc.*, 577 F.2d216, 226 n.28 (4th Cir. 1978); *Mullinax*, 2014 WL 12774925, at *11 (applying the *Barber* factors to award attorney's fees in a hybrid FLSA and Rule 23 action).

27.     Class Counsel's request for a fee of $350,000 is reasonable following consideration of the twelve *Barber* factors. Class Counsel spent over 1,188 attorney hours and 411.6 hours of non-attorney time for a total of 1,599.7 hours on this matter, a significant investment of labor and resources. ECF Nos. 90, ¶¶ 6-7. Class Counsel conducted extensive factual and legal research to determine the merits and scope of the claims, damages, and certain procedural matters. ECF Nos. 79, 79-1, 84, and 90. This research included prelitigation investigations, interviews with both named and opt-in Plaintiffs, class members, deposition preparation, written discovery, extensive briefing prior to filing the motion for conditional and class certification, in addition to, filing motions for a protective order and miscellaneous relief, to address concerns to the Court regarding alleged improper communications by Defendant

13

with class members to opt-out of the lawsuit.  *See* ECF Nos. 49, 69.  Class Counsel engaged in extensive investigations and made efforts to invalidate opt-out forms given the severity of such allegations, during the first round of the notice of lawsuit.  *See* ECF Nos. 30,35,49,62,69,78-84.  These efforts included speaking to numerous class members who insisted on remaining anonymous for fear of losing their employment and researching questions of law regarding the same.  *See Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505 (M.D.N.C. 2018) ("[T]he novelty and difficulty of the questions raised weighs in favor of approving the fee because collective counsel has to address procedurally and substantively complex FLSA issues," such as a question addressed by little Fourth Circuit caselaw.)  The court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $350,000, in accordance with the terms of the Settlement Agreement.

28.     No Class Member objected to Class Counsel's request for a fee of $350,000, which also provides support for Class Counsel's fee request.  *See e.g., In re Outer Banks Power Outage Litig.*, 2018 U.S. Dist. LEXIS 161714, at *9.

29.     Additionally, Class Counsel's request for $350,000 of the proposed Settlement Fund is less than their calculated "lodestar," which is currently $563,601.75. As such, a lodestar multiplier is not necessary.  Lodestar multipliers of less than 2, as is the case here, have been found to be "modest" in the Fourth Circuit, further supporting Class Counsel's requested award. *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *1–3 (M.D.N.C. Jan. 10, 2007) (approving a "modest" multiplier of 1.6); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, No. 1:16-CV-01088, 2018 WL 6718948, at *5 (M.D.N.C. Dec. 18, 2018)  (finding a multiplier of 1.8 "well within the normal range of lodestar multipliers); *Kruger v. Novant Health, Inc.*, No.

1:14CV208, 2016 WL 6769066, at *4–5 (M.D.N.C. Sept. 29, 2016) (approving a one-third fee of 3.69 times the lodestar).

30.    The Court also awards Class Counsel reimbursement of $25,000 in litigation costs or expenses in addition to fees in accordance with the terms of the Settlement Agreement.

31.    The attorneys' fees and the amount in reimbursement of costs and expenses, including but not limited to costs of administration, shall be paid from the Gross Maximum Settlement Amount in accordance with the terms of the Settlement Agreement.

32.    The Court finds reasonable an award for Named Plaintiff Jonathan Lewis in the amount of $75,000 for settlement of his FMLA claim and $20,000 for his service award as Named Plaintiff/Class Representative for the asserted FLSA/Rule 23 collective/class wage and hour claims; $10,000 for opt-in Plaintiff Juana Gonzalez for her service award as the first early opt-in plaintiff and due to her cooperation and participation in discovery, pre-certification assistance, and preparing a declaration for conditional certification, and deposition; $5,000 each as service awards for opt-in Plaintiffs Jayra Jimenez-Garcia and Shakara Byrd (due to their early cooperation and participation in discovery, depositions, documents, and information in furtherance of mediation); a service award in the amount of $7,000 for opt-in Plaintiff Lorena Nolazco Polito (for her cooperation and participation in discovery and sitting for a deposition, declaration in support of a motion for miscellaneous relief; document production, and information in furtherance of mediation); a service award in the amount of $9,000 for Damon Davis for his cooperation and participation in discovery, declaration in opposition to Defendant's motion for extension of time and in support of Plaintiff's motion for

15

miscellaneous relief, and participation in a three-hour telephonic hearing); service awards I the amount of $7,000 for Stephen Wagoner and Doris Woods for their cooperation and participation in discovery, declarations in support of motion for miscellaneous relief, and participation in a three-hour telephonic hearing. The service awards are in recognition of these Plaintiffs' assistance to Class Counsel and reflect their contribution to achieving the Settlement on behalf of the Rule 23 Settlement Class and all Participating FLSA Collective Members. These amounts shall be paid from the Gross Maximum Settlement Amount in accordance with the terms of the Settlement Agreement.

33. Consistent with the terms of the Settlement Agreement, the "Effective Date" of the settlement shall be as defined in the Settlement Agreement. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

## SETTLEMENT ADMINISTRATOR

34. The Court confirms its prior Order appointing Angeion as the Settlement Administrator in this case, ECF No. 85, and the duties Angeion was previously ordered to perform therein in conjunction with any order granting final approval to the Settlement in this action.

35. Consistent with the Court's prior Order appointing Angeion as Settlement Administrator, Angeion shall determine the total amount of its services and expenses in connection with the administration of the settlement in this action prior to the distribution of any amounts form the Qualified Settlement Fund it established in connection with this Settlement.

16

36. Within fifteen (15) days after the Effective Date as defined in the Settlement Agreement, the Settlement Administrator will establish and maintain a qualifying designated settlement fund pursuant to Section 468(B) of the Internal Revenue Code ("Qualified Settlement Fund" or "QSF") in accordance with the terms of the Settlement Agreement.

37. Within thirty (30) days after the Effective Date as defined in the Settlement Agreement, Defendant shall remit the Gross Maximum Settlement Amount of $630,000 to the Settlement Administrator to fund the Qualified Settlement Fund in accordance with the terms of the Settlement Agreement.

38. Within five (5) business days after Defendant remits the Gross Maximum Settlement Amount to the Settlement Administrator to fund the QSF, the Administrator will issue the Service Awards to Plaintiffs and the Class Counsel's Fees and Expenses by making the following payments in accordance with the terms of the Settlement Agreement:

- Paying Class Counsel reasonable fees in the amount of $350,000 of the Gross Maximum Settlement Amount; Reimbursing Class counsel for $25,000 in litigation costs and expenses in accordance with the terms of the Settlement Agreement;

- Paying the service awards in the amounts as detailed above, which cumulatively total $70,000.00, in addition to, the $75,000 for the Individual Settlement Amount of Named Plaintiff's FMLA claim, in accordance with the terms of the Settlement Agreement.

36. Within twenty-one (21) days after Defendant remits the Gross Maximum Settlement Amount to the Settlement Administrator to fund the QSF, or as soon thereafter as practicable, the Settlement Administrator will issue payment of the Individual Settlement Amounts to the Participating FLSA Collective Members and Participating Rule 23 Settlement

17

Class Members, provided they did not opt out or exclude themselves from the Settlement, along with a letter approved by Class Counsel and Defense Counsel explaining that the Settlement has received final approval and the claims released by the recipient, along with the URL for a website where the recipient can access a copy of the order granting final approval in accordance with the terms of the Settlement Agreement.

37. The Settlement Administrator shall be entitled to payment from the Gross Maximum Settlement Amount, for all reasonable costs associated with the Settlement Administrator's work under this Settlement Agreement. Pursuant to the terms of the Settlement Agreement, in the event the reasonable costs of the Settlement Administrator exceed $10,000, the Settlement Administrator shall file a declaration with the Court explaining the basis for the costs above the allotted $10,000. Upon review, the Court approves reasonable costs of the Settlement Administrator in the total amount of $10,000.

38. Upon the Effective Date, all Rule 23 Settlement Class Members who did not timely exclude themselves from the settlement, all Opt-in Plaintiffs, and the Named Plaintiff shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the terms of the Settlement Agreement.

39. In accordance with the terms of the Settlement Agreement, upon the Effective Date, Named Plaintiff Jonathan Lewis, Early Opt-ins Juana Gonzalez, Jayra Jimenez-Garcia, Shakara Byrd, Lorena Nolazco Polito, Damon Davis, Stephen Wagoner, and Doris Woods on behalf of themselves, their heirs, trustees, executors, successors, administrators, assigns, and representatives, shall and do hereby forever release, discharge and agree to hold harmless the Defendant Releasee from any and all charges, complaints, claims, liabilities, obligations,

18

promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorney fees and costs), known or unknown, at law or in equity, and whether arising under federal, state, or other applicable law, which they may have against Defendant arising out of, related to, or in any way connected with, their employment with Defendant, including but not limited to the Released Claims and their claims arising under the FLSA and the NCWHA, as well as any other claim arising out of any and all transactions, occurrences, or matters between Named Plaintiff and/or Early Opt-Ins and Defendant Releasee through the Effective Date, except as prohibited by law. *See* ECF No. 79-1 and § VI(1).

As further explained by the Settlement Agreement, without limiting the generality of the foregoing, the claims released by both Named Plaintiff and the Early Opt-ins:

> shall include, but not be limited to, any and all claims under the (a) Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended; (b) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended; (c) the Civil Rights Act of 1991; (d) 42 U.S.C. § 1981, as amended; (e) the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended; (f) the Equal Pay Act of 1963, as amended; (g) the Employee Retirement Income Security Act, as amended; (h) the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161 *et seq.*; (i) the Rehabilitation Act of 1973, as amended; (j) the Family and Medical Leave Act of 1993, at amended, 29 U.S.C. § 2601, *et seq.*; (k) the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; (l) the Workers Adjustment and Retraining Notification Act (WARN), 29 USC § 2100 *et. seq.*, as amended; (m) the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, *et seq.*; (n) North Carolina Persons With Disabilities Protection Act, N.C. Gen. Stat. § 168A-1, *et seq.*; (o) Retaliatory Employment Discrimination Act (REDA) N.C. Gen. Stat. § 95-240, *et seq.*; and (p) any and all other federal, state and local statutes, ordinances, regulations, rules and other laws, and any and all claims based on constitutional, statutory, common law or regulatory grounds, as well as any other claims based on theories of wrongful or constructive discharge, breach of contract or implied contract, fraud, misrepresentation, promissory estoppel or intentional and/or negligent infliction of emotional distress, or damages under any other federal, state or local statutes, ordinances, regulations, rules or laws.

Case 1:18-cv-00064-LCB-JEP   Document 93   Filed 03/23/21   Page 19 of 22

Named Plaintiff and Early Opt-ins also agree that, to the extent permitted by law, if a claim is prosecuted in their name against one of the Defendant Releasees before any court or administrative agency, they waive, and agree not to take, any award of money or other damages from such proceeding. Named Plaintiff and Early Opt-ins agree that, unless otherwise compelled by law, if a claim is prosecuted in any of their names against one of the Defendant Releasees that they will immediately request in writing that the claim on their behalf be withdrawn.

ECF No. 63-1 and § VI(1).

40. In accordance with the terms of the Settlement Agreement, each and every Rule 23 Settlement Class Member and Participating FLSA Collective Member, on behalf of themselves, their heirs, trustees, executors, successors, administrators, assigns, and representatives, shall and do hereby forever release, discharge and agree to hold harmless the Defendant Releasees of and from any and all Released Claims that any Rule 23 Settlement Class Member and/or Participating FLSA Collective Member has or might have, known or unknown, asserted or unasserted, of any kind whatsoever relating to the payment of wages, including, but not limited to, all claims under the North Carolina Wage and Hour Act and the FLSA, up to and including the date of the Court's final approval of the Settlement. Rule 23 Settlement Class Members who did nothing upon receipt of the Notice will automatically receive their Individual Settlement Amount available to them under the Settlement, and they will release any claims they have under the North Carolina Wage and Hour Act. Otherwise, those who do not release FLSA claims either by having filed a consent to join suit as party plaintiff or by submitting a timely and valid Claim Form to the Settlement Administrator, preserve such FLSA claims. *See* ECF No. 79-1 § and VI(2).

41. Pursuant to the terms of the Settlement Agreement, the Named Plaintiff, all Opt-in Plaintiffs, and all Rule 23 Settlement Class Members who did not timely request

exclusion are further barred from accepting, recovering, or receiving any back pay, liquidated damages, or other damages, or any other form of relief based on any claims asserted or settled in this action which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Defendants, and are enjoined from pursuing any claim released as part of this settlement. (ECF No. 79-1 and §§ VI(1), (2), (3)), with the exception that for those Rule 23 Settlement Class Members who did not opt into the FLSA action, their FLSA claims are preserved. The Court retains jurisdiction over this action and the Parties for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The Parties shall abide by all terms of the Settlement Agreement, (ECF No. 79-1), which are incorporated herein, and this Order.

42. Named Plaintiff's, Early Opt-ins', all of the Rule 23 Settlement Class Members', and all of the Participating FLSA Collective Members' released claims (including unknown claims) are hereby discharged with prejudice as to Named Plaintiff, Early Opt-ins, all of the Rule 23 Settlement Class Members, and all of the Participating FLSA Collective Members. Named Plaintiff, Early Opt-ins, all of the Rule 23 Settlement Class Members, and all of the Participating FLSA Collective Members are barred and permanently enjoined from prosecuting, commencing or continuing any and all released claims.

43. The Court directs the settlement funds be distributed in accordance with the terms of the Settlement Agreement.

44. The Court hereby directs the entry of final judgment in this case and dismisses this action with prejudice in its entirety in accordance with the terms of the Settlement

Agreement.  The Clerk of the Court is ordered to enter Final Judgment in this action adjudicating all the claims and all the Parties' rights and liabilities pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

## Conclusion

For the foregoing reasons, the Unopposed Motion for Final Approval of the Collective and Class Action Settlement, (ECF No. 79-1), is GRANTED; the Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, (ECF No. 82) is GRANTED; and the Unopposed Motion for Service Awards, (ECF No. 80), is also GRANTED.

The Clerk of Court is respectfully DIRECTED to enter final judgment and close the case.

IT IS SO ORDERED.

This, the 23rd day of March 2021.

/s/ Loretta C. Biggs
United States District Judge

22